PETTIGREW, J.
| gRacheI Pray (Pray), the plaintiff in this matter, alleged she sustained injuries as a result of a rear-end collision and that the accident was caused by the sole negligence of the rear-ending vehicle’s driver, Darral Norwood (Norwood). Pray appeals a summary judgment granted in favor of the insurer of the owner of the rear-ending vehicle, based on a finding that Norwood was excluded from coverage because, at the time of the accident, he was a “non-permissive” driver under the insurer’s policy. After a thorough review of the record, we affirm.
FACTUAL AND PROCEDURAL BACKGROUND
On January 14, 2014, Norwood was driving a 2005 Toyota Camry owned by Toshi-ka W. Smith (Smith), the mother of Nor-wood’s then girlfriend, Laterrica Gustave (Gustave). Gustave lived with her mother, Smith, and Norwood regularly spent three to four nights a week at Smith’s home. According to Norwood, when he was not staying with Gustave, he stayed with his mother at another location. Also, Norwood did not have a driver’s license or a vehicle.
Smith owned two vehicles: a Lexus that she drove for her own personal use, and the Camry, which she generally left at the house for Gustave to use. Gustave had Smith’s express permission to drive the Camry for certain various purposes without asking, and for all other purposes, she was required first to seek Smith’s permission before driving it. Smith had an automobile liability policy in place on the *473 Camry in which Smith is the only named insured. That policy contains a provision excluding from coverage any damages caused by someone operating the vehicle without the express or implied permission of the insured (Smith) at the time of the accident.
On the morning of the accident, Nor-wood needed to be at work for 8:00 a.m. Norwood attempted to wake up Gustave, who was supposed to drive him to work. However, Gustave did not want to get up and take him to work. According to Nor-wood, Gustave told him to take the Camry, as she wanted to go back to sleep. Although Gustave denied telling Norwood that he could drive the Camry to work, it is undisputed that Norwood was driving the Camry to work on the morning of the accident. The |scollision occurred when Norwood, driving Smith’s Camry, rear-ended Pray’s vehicle after Pray slowed her vehicle due to congested traffic ahead of her.
Pray filed suit on July 30, 2014, naming Norwood and the insurer of Smith’s Camry at the time, USAgencies Casualty Insurance Company, Inc., as defendants. Sometime after the petition was filed, US-Agencies became Affirmative Casualty Insurance Company (Affirmative). Affirmative filed a motion for summary judgment asserting that Norwood had neither express nor implied permission to drive the Camry and urging the application of the exclusionary provision in the policy denied coverage. Pray opposed the motion arguing that the evidence would show that Norwood had the express or implied permission to drive the Camry the day of the accident, and that permissive use of the vehicle at the time of the accident triggered coverage under the policy. Pray alternatively argued that, at a minimum, the evidence concerning whether Norwood had permissive use of the Camry on the day at issue was in dispute, revealing genuine issues of material fact that render summary judgment improper.
Following a November 16, 2015 hearing on Affirmative’s motion for summary judgment, during which the deposition testimonies of Smith, Gustave, and Norwood were introduced into evidence, the district court found that Norwood’s testimony revealed that he had actual knowledge that he did not have Smith’s permission to drive any of her vehicles, including the Camry he was driving on the date of the accident. Based on Norwood’s actual knowledge, the district court found Norwood was a non-permissive driver as defined by the policy, and thereby, excluded from coverage. Summary judgment in favor of Affirmative was granted, dismissing, with prejudice, Pray’s claims against it, in a judgment dated December 23, 2015. That judgment also declared that Affirmative had no duty to defend Norwood.
Pray sought and was granted an order for devolutive appeal. Pray and Affirmative filed appellant and appellee briefs respectively. However, during the pendency of this appeal, Affirmative was placed into insolvency by an Order of Liquidation issued by the Nineteenth Judicial District Court, Parish of East Baton Rouge, resulting in the Louisiana Insurance Guaranty Association (LIGA) being responsible for claims pending against | ¿Affirmative, pursuant to La. R.S. 22:2055(6). Accordingly, the appeal now before this court is by Pray, as appellant, and LIGA, as appellee, which filed its own appellee brief in which, in addition to its own representations and arguments that summary judgment is proper under the facts and circumstances of this case, it also adopted, by reference, the original appellee brief filed by Affirmative.
*474 ASSIGNMENTS OF ERROR
Pray asserts two assignments of error on appeal. First, she argues that the district court erred in impermissibly weighing the evidence and the credibility of the witnesses’ testimony regarding Norwood’s permissive use of the Camry, “where there was abundant contradictory and conflicting testimony.” Additionally, Pray contends the district court erred in applying “an improper standard” regarding whether Norwood was driving the vehicle with the implied permission of its insured.
ISSUE ON APPEAL
The issue on appeal is whether the district court erred in finding, based on the undisputed evidence presented, and based on Norwood’s knowledge gained directly from Smith, that Norwood did not have her permission, as the owner, to drive the Camry at issue, and furthermore, that the permittee, Gustave, also did not have Smith’s permission to allow Norwood, or anyone else, to drive the Camry. Also, whether the district court erred in concluding as a matter of law, based on that finding of fact regarding Norwood’s actual knowledge, that Norwood was not a permissive driver pursuant to the policy exclusion.
For the reasons expounded upon below, we find that Norwood’s uncontroverted testimony (that he knew first-hand that he did not have permission to use Smith’s Camry) was sufficient to establish, as a matter of law, that Norwood was a non-permissive driver under the policy language on the date of the accident. Accordingly, we need not reach Pray’s assignment of error concerning “implied permission”, as our decision renders such inquiry irrelevant.
_yDISCUSSION/ANALYSIS OF ISSUE
Pray claims the district court erred by weighing that evidence as well as the credibility of the witnesses, which because of their disputed nature, prohibit summary judgment. After a thorough de novo review of that evidence, we find no error. While the evidence is conflicting and disputed as to various other facts, it nonetheless establishes, without dispute, that as a matter of law, Norwood is a non-permissive driver under Smith’s automobile liability policy.
Smith’s automobile policy contains the following exclusion:
Coverage for your Liability to Others does not apply to any of the following:
3. Bodily injury or property damage caused by any person operating or using a motor vehicle without the expressed or implied permission of [the insured] at the time of the accident.
The issue of whether a person operated an automobile with the express or implied permission of the named insured is determined according to the circumstances of the particular case. Malmay v. Sizemore, 493 So.2d 620, 623 (La. 9/8/86).
The testimony of Norwood himself, establishes unequivocally that he had actual knowledge, expressed by Smith, that he did not have her permission to drive the Camry. The evidentiary basis for this finding consists of the following excerpts from Norwood’s deposition testimony[2]:
[Direct examination of Norwood by plaintiff counsel]
Q. In January of 2014, did you ever drive either the Lexus or the Camry?
A. When [Gustave] had it, the Camry, I drove the Camry like once or twice.
[[Image here]]
*475 Q. And she said that was okay?
A. [Gustave] said it was okay. Her mother didn’t really know, like.
[[Image here]]
Q. Did [Smith] ever specifically tell you you cannot drive my vehicle.
A. No, sir.
Q. And you said you never specifically asked [Smith], right? But, [Gustave] did tell you you could use the Camry, right?
A. Yes, sir.
[[Image here]]
Q. And how would you usually get to work from [Gustave’s] house when you were staying at [her] house?
| a A. Either her mother would drop me off or she would—[Gustave] would drop me off.
[[Image here]]
[Re: the morning of the accident]
Q. All right. Can you tell me why [Gus-tave] didn’t drop you off?
A. I think she didn’t want to get up, and she was like I could just take the car because her momma wasn’t there and I would be home before, you know, her mother would get off.
[[Image here]]
[Re: right after the accident]
A. I was so nervous because I really wasn’t even supposed to be in the car.
Q. When you say you weren’t supposed to be in the car, [Gustave] had told you you could drive the car?
A. Right, but it wasn’t her car.
[[Image here]]
Q. When you took the car that morning to go to work, were you worried that you would be reported as having stolen that car?
A. No, sir. I was going to make it home before her mother got back.
[[Image here]]
[Cross examination by counsel for insurer]
Q. Now you testified just a second ago that you thought, you were nervous because you thought—you could get the vehicle back before [Smith] got home; is that correct?
A. Yes, sir.
Q. And that’s because you weren’t supposed to have the vehicle, according to [Smith], correct?
A. Yes, sir.
[[Image here]]
Q. Did [Smith] ever tell you you could not use the vehicle? .
A. No, sir.
Q. Okay. Why were you nervous if she had never told you that?
A. Because she didn’t give me—she didn’t give me permission to use it.
Q. Did you ever ask her for permission?
A. No, sir.
Q. Did she ever tell you, or anybody else, nobody is to drive my vehicle?
A. No, sir. No, sir, not me but, you know.
Q. Who did she tell that, if you know?
A. Her other kids, like, you know. Not [Gustave], but her sons, you know.
Q. And so you had heard her tell other folks that only [Gustave] was supposed to use the vehicle?
A. Yes, sir.
[[Image here]]
Q. Okay, so your understanding was that you were not supposed to use the vehicle?
A. Yes, sir.
[[Image here]]
Q. Did you hear [Smith] say that in the past, that nobody beside [Gustave] is supposed to drive this car?
*476 A. Yes, sir. On like one or two occasions I heard her say it ...
[[Image here]]
Q. Okay. So the understanding around the house with you, [Gustave, and Smith], on the times that you were staying over or visiting, was that nobody touches her cars except her and [Gus-tave], if she needed to do something.
A. (Witness nods head affirmatively.)
Ji- ■ •
Q. So, you heard [Smith] tell [Gustave], Don’t let anybody else use my car, correct?
A. Yes, sir.
Q. And you heard that personally?
A. Yes, sir.
[[Image here]]
Q. What did that mean to you? If [Smith] had two vehicles available and she volunteered to take you somewhere, instead of giving you the keys or telling you to take her vehicle, did that mean anything to you? ...
A. Yeah, Like, you know, she didn’t want anybody using her car.
[[Image here]]
Q. Now, did you ever ask [Smith] to use the vehicle?
A. No, sir.
Q. Was it your understanding, Don’t bother to ask her because she’s not going to let me?
A. Right.
Q. All right. Did she ever tell you that you weren’t covered under insurance?
A. I pretty much knew that already.
[[Image here]]
Q. And you didn’t want to get [Gus-tave] in trouble with [Smith] by telling her that she said it was okay for you to drive the car?
A. I didn’t want to get her in trouble.
Q. Okay. Because you—your understanding was that [Gustave] was not supposed to allow you to drive the vehicle?
A. (Witness nods head affirmatively.)
[[Image here]]
Q. Your understanding of [Smith], at some point told you, You can’t drive my car because you don’t have a license?
A. She didn’t directly tell me but, you know, she didn’t want nobody driving a car—her son, nobody, if you don’t have your license, you’re not going to get behind the wheel.
The foregoing testimony established Norwood had actual knowledge that, not only was he not permitted by Smith to drive the vehicle, but also that Gustave, who had to ask, but was ordinarily granted Smith’s permission to drive the vehicle, was also prohibited by Smith from granting Norwood, or anyone else, permission to drive Smith’s vehicles, including the Camry.
Moreover, this same testimony distinguishes this matter factually from jurisprudence relied on by the plaintiff, in which the particular facts of those cases yielded results supporting coverage. In those cases, the court found that a third party was a permissive driver under a similar policy exclusion despite the fact that the third party driver had actual knowledge from the owner of the vehicle that he did not have permission to drive it. However, in those cases, the third party drivers had received actual permission to drive the insured vehicle from a permittee. The courts found under |sthe particular facts of each case, that some of the applicable facts were sufficient to establish that the driver had implied permission, reasoning that the driver had been given permission by a permittee where it was foreseeable that the permittee would extend that permission to a third party driver *477 (second permittee), even when the permit-tee lacks that authority from the owner (named insured), and when the second per-mittee is unaware that the permittee lacks the owner’s authority to grant permission. See e.g., Malmay, 493 So.2d 620; Perkins v. McDow, 615 So.2d 312 (La. 2/22/93); Langston v. Shirley, 28,815 (La.App. 2 Cir. 10/30/96), 682 So.2d 1281, writ denied, 97-0008 (La. 2/7/97), 688 So.2d 510.
The case before us is distinguishable on the material fact—present in this matter, but not in any of the jurisprudence—that Norwood’s testimony, in addition to establishing that he had actual knowledge that he did not have the permission of Smith to drive any of her vehicles, also established unequivocally that Norwood also had actual knowledge that Gustave lacked Smith’s authority to grant the permission given to her to anyone else. Because Norwood had actual knowledge that he did not, and could not, have permission from the per-mittee, (Gustave), he lacked the requisite permission required to trigger coverage under the policy, rendering any inquiry regarding implied permission (and discussion of Pra^s second assignment of error) inapplicable and unnecessary.
Accordingly, summary judgment was properly granted, and the judgment on appeal is affirmed. All costs of this appeal are assessed to the plaintiff, Rachel Pray.
AFFIRMED.

. We recognize the redundancy of the testimony; however, we redacted every relevant exchange in the deposition as we base our conclusion on the totality of this evidence.